UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JOANNE EILEEN BRACHT,<br><br>　　　　Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social<br>Security,<br><br>　　　　Defendant. | No. CV-10-00316-CI<br><br>ORDER GRANTING PLAINTIFF'S<br>MOTION FOR SUMMARY JUDGMENT |

BEFORE THE COURT are cross-Motions for Summary Judgment. (ECF No. 13, 15.) Attorney Jeffrey Schwab represents Joanne Bracht (Plaintiff); Special Assistant United States Attorney Nancy A. Mishalanie represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. (ECF No. 6.) After reviewing the administrative record and briefs filed by the parties, **IT IS ORDERED** Plaintiff's Motion for Summary Judgment is **GRANTED**, and the matter is reversed and remanded to the Commissioner for additional proceedings pursuant to 42 U.S.C. § 405(g).

## JURISDICTION

Plaintiff protectively filed for disability insurance benefits (DIB) and Supplemental Security Income (SSI) on February 1, 2007. (Tr. 18; 117.) She alleged disability due to arthritis, asthma, depression, insomnia, and disabling elbow pain. (Tr. 138.) She claimed an onset date of June 1, 2006. (Tr. 138.) Her claim was denied initially and on reconsideration. (Tr. 79-81; 84-85.) Plaintiff requested a hearing before an administrative law judge (ALJ), which was held on August 6, 2009, before ALJ Louis J. Volz,

III.  (Tr. 27-57.)  At the hearing, vocational expert John Yent testified.  (Tr. 50-55.)  The ALJ denied benefits on September 22, 2009, and the Appeals Council denied review.  (Tr. 1-3; 18-26.)  The instant matter is before this court pursuant to 42 U.S.C. § 405(g).

### STATEMENT OF THE CASE

The facts of the case are set forth in detail in the transcript of proceedings and are briefly summarized here.  At the time of the hearing, Plaintiff was 53 years old with a high-school education and one year of college.  (Tr. 148; 298.)  Plaintiff has past work experience as an accounts receivable clerk, government clerk, legal assistant, office assistant, retail sales associate, school secretary and typist.  (Tr. 120.)

Plaintiff lives in a house with her husband and one child.  (Tr. 36-38.)  Plaintiff testified that on May 28, 2006, while at work she tripped, and as a result, she suffered severe neck pain.  (Tr. 33.)  About the same time, she experienced frequent, severe asthma attacks.  (Tr. 40-41; 139.) She reported that she "missed a lot of work due to asthma and [her] neck problem" and she was ultimately fired.  (Tr. 139.) Plaintiff's daily activities include light household cleaning, light grocery shopping, working on the computer, walking up to two miles, and swimming in her pool. (Tr. 36-40.)  Plaintiff testified that her asthma prevents her from going outside when her neighbors are burning wood in their fireplaces, when an inversion is present, or when traffic presents significant carbon monoxide. (Tr. 36; 40-41.)  She occasionally works as a substitute office secretary for the school district.  (Tr. 41.)

### ADMINISTRATIVE DECISION

ALJ Louis J. Volz, III, found Plaintiff's date of last insured

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 2

for DIB purposes was December 31, 2011. (Tr. 18.) At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since June 1, 2006, the alleged onset date. (Tr. 20.) At step two, he found Plaintiff had severe impairments of (1) lumbosacral and lumbar strain; (2) asthma; (3) right-hand dominant, status-post right upper extremities surgeries; and (4) osteoarthritis of the right upper extremities. (Tr. 20.) The ALJ determined at step three Plaintiff's medically determinable impairments, alone and in combination, did not meet or medically equal one of the listed impairments in 20 C.F.R., Appendix 1, Subpart P, Regulations No. 4 (Listings). (Tr. 20-21.) The ALJ found Plaintiff's subjective complaints regarding functional limitations were not fully credible. (Tr. 22-23.) At step four, he determined Plaintiff had the residual functional capacity to perform medium work as defined in 20 C.F.R. § 404.1567(c), except she has occasional manipulation limits. (Tr. 21.) As a result, the ALJ concluded that Plaintiff is capable of performing her past relevant work because that work consisted of sedentary and light work. (Tr. 24.) The ALJ found that in addition to past relevant work and considering Plaintiff's age, education, and work experience, Plaintiff could also perform other jobs that exist in significant numbers in the national economy such as telemarketer, information clerk, and dispatcher. (Tr. 24-25.) The ALJ ultimately found Plaintiff was not disabled from June 1, 2006, through the date of his decision (September 22, 2009). (Tr. 25.)

**STANDARD OF REVIEW**

In *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), the court set out the standard of review:

    A district court's order upholding the Commissioner's

denial of benefits is reviewed *de novo*. *Harman v. Apfel*, 211 F.3d 1172, 1174 (9th Cir. 2000). The decision of the Commissioner may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id.* at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, although deference is owed to a reasonable construction of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).

It is the role of the trier of fact, not this court, to resolve conflicts in evidence. *Richardson,* 402 U.S. at 400. If evidence supports more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988). If substantial evidence exists to support the administrative findings, or if conflicting evidence exists that will support a finding of either disability or non-disability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

**SEQUENTIAL EVALUATION PROCESS**

Also in *Edlund*, 253 F.3d at 1156-1157, the court set out the

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 4

requirements necessary to establish disability:

> Under the Social Security Act, individuals who are "under a disability" are eligible to receive benefits. 42 U.S.C. § 423(a)(1)(D). A "disability" is defined as "any medically determinable physical or mental impairment" which prevents one from engaging "in any substantial gainful activity" and is expected to result in death or last "for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Such an impairment must result from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). The Act also provides that a claimant will be eligible for benefits only if his impairments "are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . " 42 U.S.C. § 423(d)(2)(A). Thus, the definition of disability consists of both medical and vocational components.

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). This burden is met once a claimant establishes that a medically determinable physical or mental impairment prevents her from engaging in her previous occupation. 20 C.F.R. §§ 404.1520(a), 416.920(a). "This requires the presentation of 'complete and detailed objective medical reports of his condition from licensed medical processionals.'" *Meanel v. Apfel,* 172 F.3d 1111, 1113 (9th Cir. 1999).

If a claimant cannot do past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work; and (2)

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 5

specific jobs exist in the national economy which claimant can perform. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Kail v. Heckler*, 722 F.2d 1496, 1497-98 (9th Cir. 1984).

**ISSUES**

The question is whether the ALJ's decision is supported by substantial evidence and free of legal error. Plaintiff argues the ALJ erred by (1)establishing an Residual Functional Capacity ("RFC") that was not supported by substantial evidence; (2) proposing a flawed hypothetical; and (3) finding Plaintiff not credible. (ECF No. 14 at 4-9.) Defendant contends the ALJ's decision is supported by substantial evidence and free of legal error. (ECF No. 16.)

**1.   The RFC.**

Plaintiff argues that the ALJ's RFC of medium duty work is not supported by substantial evidence. Specifically, Plaintiff argues that the RFC is supported by only two reviewing physicians' DDS reports – one dated April 18, 2007, and one dated May 30, 2007. (ECF No. 14 at 4.) Plaintiff contends that the DDS reports are based upon an incomplete understanding of Plaintiff's physical impairments.

In general, opinions from non-examining medical sources are given less weight than treating or examining doctors. *Lester v. Chater*, 81 F.3d 821, 831, (9th Cir. 1995). An ALJ must evaluate the opinion of a non-examining source and explain the weight given to it. Social Security Ruling ("SSR") 96-6p. Although an ALJ generally gives more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a non-examining doctor's opinion may nonetheless constitute substantial evidence if it is consistent with other independent evidence in the record. *Thomas v. Barnhart*,

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 6

278 F.3d 947, 957 (9th Cir. 2002); *Orn v. Astrue*, 495 F.3d 625, 632-33 (9th Cir. 2007). In this case, the reviewing doctors' conclusions regarding Plaintiff's disability are not consistent with the other independent evidence in the record.

Prior to spring of 2007, medical reports related to Plaintiff's elbow condition were scarce. While she initially complained of elbow pain, the majority of Plaintiff's pain complaints were related to her fall at work and involved her neck and back, and occasionally her feet. (Tr. 185; 191-92; 196-210; 245; 248; 253.) A September 2006 nuclear medicine full body scan revealed Plaintiff's extremities were within normal limits. (Tr. 218.) However, beginning in the fall of 2006, Plaintiff began experiencing increasing problems with her right elbow. Neurologist Craig M. Garver, M.D., noted that Plaintiff reported she had three surgeries on her right arm, and she continued to experience decreased range of motion, rotation and "some discomfort with elbow pain. That is longstanding." (Tr. 215.) Dr. Garver noted that on exam, Plaintiff could not fully extend or pronate her right arm. (Tr. 216.) He described Plaintiff's condition:

> [U]lnar distribution paresthesias, more prominent left than right. Exam is normal with the exception of give-way weakness due to pain on the right. There is some scar tissue there and I am unable to straighten the arm, and anatomy has been altered by the excision of the radial head.

(Tr. 217.) Dr. Garver ordered nerve conduction studies.[1] (Tr. 217.)

---

[1] It is not clear from this record if these studies were performed, because nerve conduction studies were not included in the administrative record.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 7

On January 3, 2007, Lowell C. Allred, M.D., examined Plaintiff and noted, "Supination and pronation are also minimal on the right, normal on the left.  Strength in the deltoid and upper arms bilaterally is 4+, right forearm and hand strength are diminished compared to the left side which is normal." (Tr. 246.)  In his diagnosis, Dr. Allred commented that Plaintiff had a history with right elbow problems, and her surgeries had a "fair to poor outcome." (Tr. 246.)

On March 13, 2008, Edgar Hoover, M.D., examined Plaintiff and ordered x-rays of Plaintiff's elbow. (Tr. 293.)  The x-rays revealed Plaintiff had a significant, old trauma to the elbow:

> Smoothly marginated bone fragments are present in the region of the coronoid process and the olecranon.  The radial head is deformed.  There are degenerative changes at the radial capitellar and ulnar trochlear articulations. All these findings could be the result of old trauma.  I do not see evidence of acute fracture or dislocation.

(Tr. 293.)  On March 26, 2008, Dr. Hoover commented that the x-ray revealed "quite a lot of degenerative changes and evidence of old fractures," but he saw "nothing acute." (Tr. 294.)  On August 11, 2008, radiologist David Kim took new x-rays of Plaintiff's right elbow and opined that Plaintiff suffered from "severe osteoarthritis in the right elbow...." (Tr. 297.)  Leona Hays, Orthopedic ARNP, compared the March and August 2008 films and noted that Plaintiff's right arm showed "severe degenerative changes with bone-on-bone appearance, cystic changes.  She has [] evidence of perhaps even some loose bodies and a fragment off the olecranon that looks to be due to an old avulsion injury." (Tr. 298.)  Ms. Hays noted that old nerve conduction studies from 2004 were interpreted as "normal indicating no neuropathy." (Tr. 298.)  Ms. Hays diagnosed Plaintiff

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 8

with "advanced right elbow degenerative joint disease with dysfunction" and "possible ulnar nerve entrapment...." (Tr. 298.) Nerve conduction studies were again ordered.[2] (Tr. 299.)

In sum, considerable independent medical evidence exists that Plaintiff suffers from a severe impairment in her right elbow. The ALJ erred when he gave primacy to the opinions of non-treating, non-examining medical consultants, Charles Wolfe, M.D., and Harris Faigel, M.D., because their conclusions fail to address Plaintiff's elbow impairment and, thus, are inconsistent with the medical evidence from Plaintiff's treating physicians.

Further, the ALJ failed to address Ms. Hayes' opinion or diagnosis. The Commissioner argues that Ms. Hayes is not an acceptable medical source and, thus, not qualified to provide a medical opinion. (ECF No. 16 at n.2.) In evaluating a disability claim, the ALJ must consider evidence from medical sources. 20 C.F.R. §§ 404.1512, 416.912. Only "acceptable medical sources" such as physicians and psychologists may establish an impairment. 20 C.F.R. §§ 404.1513, 416.913. The ALJ is also required to consider evidence from sources which are not acceptable medical sources. 20 C.F.R. §§ 404.1513(d), 416.913(d); S.S.R. 06-3p. "Other sources" include nurse practitioners, physician assistants, therapists, teachers, social workers, spouses and other non-medical sources. 20 C.F.R. §§ 404.1513(d), 416.913(d). The opinion of an acceptable medical source is given more weight than that of an "other source." 20 C.F.R. §§ 404.1527, 416.927; *Gomez v. Chater*, 74 F.3d 967, 970-71

---

[2]No corresponding record of a nerve conduction study was included in the administrative record.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 9

(9th Cir. 1996). However, the ALJ is required to "consider observations by non-medical sources as to how an impairment affects a claimant's ability to work." *Sprague v. Bowen*, 812 F.2d at 1232. Pursuant to *Dodrill v. Shalala*, 12 F.3d 915 919 (9th Cir. 1993). An ALJ is obligated to give reasons "germane" to such testimony before discounting it.

Ms. Hayes is a nurse practitioner and an "other source" under 20 C.F.R. § 404.1513(d). The ALJ may, therefore, reject the opinion for germane reasons[3]. *See Dodrill*, 12 F.3d 919. Opinions of "other medical sources" may be given more weight than a treating physician if certain factors are present:  "Each case must be adjudicated on its own merits based on a consideration of the probative value of the opinions and a weighing of all the evidence in that particular

---

[3] Also, when a nurse practitioner is "working closely with, and under the supervision of" a physician, the nurse practitioner's "opinion is to be considered that of an acceptable medical source." *Taylor v. Comm'n of Soc. Sec. Admin.*, 659 F.3d 1228 (9th Cir. 2011) (internal quotations omitted)(citing *Gomez,* 74 F.3d at 971 (nurse practitioner considered an acceptable medical source because she "worked closely under the supervision of [the physician] and . . . was acting as an agent of [the physician]"). In this case, Ms. Hayes' report contained the following notation: "co-approved by: 9/17/2008 7:24:00 PM Daniel Canfield." (Tr. 299.) Dr. Canfield is an orthopedic surgeon. It is not clear from this record how closely Ms. Hayes worked with Dr. Canfield, but it is arguable that given Dr. Canfield's signature, Ms. Hayes' opinion should have been considered that of an acceptable medical source.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 10

case." SSR 06-3p.  For example, where the "other source" has seen the claimant more often and has provided better supporting evidence and a better explanation for his or her opinion, it may be appropriate for an ALJ to give greater weight to the "other source" opinion than to an acceptable medical source.  *Id.*

Although the ALJ is not required to discuss every piece of evidence, the ALJ must explain why significant probative evidence was rejected. *Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984).  In this case, the ALJ erred by failing to provide a germane reason – or any reason – for rejecting the opinion of Ms. Hayes and Dr. Canfield, and instead by giving determinative weight to the two DDS reports.  See *Lester*, 81 F.3d at 831 ("The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician.").

**2.   The Hypothetical.**

Plaintiff contends that the hypothetical was erroneous because it omitted Plaintiff's most serious impairments.  (ECF No. 14 at 7.) The ALJ's initial hypothetical included "a residual functional capacity compatible with medium activity" along with the abilities to sit and stand/walk for at least six hours in an eight-hour workday, avoidance of concentrated exposure to fumes, odors, gasses, and poor ventilation.  (Tr. 52.)  Under this hypothetical, the VE opined that a worker could perform all of Plaintiff's past work. (Tr. 52.)  The VE testified that if the hypothetical was modified to include bilateral, occasional manipulated limits, a worker would not be able to perform Plaintiff's past work.  (Tr. 52.)  Finally,

when the hypothetical was modified to describe a worker who could frequently manipulate, instead of occasionally manipulate, the worker could perform all of Plaintiff's past work, along with other jobs. (Tr. 52-53.) The ALJ concluded that Plaintiff was capable of performing "medium work with occasional manipulation limits." (Tr. 21.)

For the testimony of a VE to be considered reliable, the hypothetical must include all claimant's functional limitations, both physical and mental that are supported by the record. *Thomas*, 278 F.3d at 955. Hypothetical questions posed to a VE need not include all alleged limitations, but rather only those limitations which the ALJ finds to exist. *See, e.g., Magallanes v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *Copeland v. Bowen*, 861 F.2d 536, 540 (9th Cir. 1988). As a result, an ALJ must propose a hypothetical that is based on medical assumptions, supported by substantial evidence in the record, that reflects the claimant's limitations. *Osenbrock v. Apfel*, 240 F.3d 1157, 1163-64 (9th Cir. 2001)(citing *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995)); *see also Andrews*, 53 F.3d at 1043 (although the hypothetical may be based on evidence which is disputed, the assumptions in the hypothetical must be supported by the record).

In this case, the ALJ's hypothetical did not include all of Plaintiff's functional limitations, notably the limitations caused by her severe elbow impairment. The ALJ failed to consider this impairment, and it is unclear how Plaintiff's elbow condition would affect her residual functional capacity. As a result, the hypothetical was not supported by sufficient evidence.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 12

**3. Credibility.**

Plaintiff argues that the ALJ erred in finding her pain complaints not credible because none of her treating doctors questioned the veracity of her pain complaints or her credibility. (ECF No. 14 at 7.) When the ALJ finds a claimant's statements as to the severity of impairments, pain, and limitations are not credible, the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude the ALJ did not arbitrarily discredit claimant's allegations. *Thomas*, 278 F.3d at 958-959; *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991) (en banc). If no affirmative evidence exists that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's allegations regarding the severity of symptoms. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). The ALJ engages in a two-step analysis in deciding whether to admit a claimant's subjective symptom testimony. *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). Under the first step, the ALJ must find the claimant has produced objective medical evidence of an underlying "impairment," and that the impairment, or combination of impairments, "could reasonably be expected to produce pain or other symptoms." *Cotton v. Bowen*, 799 F.2d 1403, 1405 (9th Cir. 1986). Once the *Cotton* test is met, the ALJ must evaluate the credibility of the claimant.

In evaluating credibility, the ALJ may engage in ordinary techniques of credibility evaluation, including considering claimant's reputation for truthfulness and inconsistencies in claimant's testimony, or between claimant's testimony and conduct,

claimant's daily activities, claimant's work record and testimony from physicians and third parties concerning the nature, severity and effect of the symptoms of which claimant complains. *Thomas*, 278 F.3d at 958-59.

In this case, the ALJ focused on Petitioner's daily activities and inconsistencies in her testimony. If a claimant engages in numerous daily activities involving skills that could be transferred to the workplace, the ALJ may discredit the claimant's allegations upon making specific findings relating to those activities. See *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989); see also *Morgan*, 169 F.3d at 600 (claimant's ability to fix meals, do laundry, work in the yard, and occasionally care for his friend's child was evidence of claimant's ability to work). The ALJ's findings relate to Plaintiff's activities involving her ability to stand and walk – i.e., walking up to two miles per day, swimming, play rehearsals, living in a third-floor bedroom, – were inconsistent with her claimed limitations. (Tr. 24; 36; 38-40; 42; 48-49; 255.) To the extent credibility findings related to Plaintiff's ability to walk and stand, the ALJ's findings are supported by the record.

However, the ALJ failed to consider Plaintiff's arm impairment, despite the objective medical evidence establishing the impairment and the finding that one of Plaintiff's severe impairments was osteoarthritis of the upper right extremities. (Tr. 20.) The Physical Residual Functional Capacity Assessment completed by Charles Wolfe, M.D., indicated that Plaintiff could occasionally lift and/or carry 50 pounds, frequently lift/carry 25 pounds, and

push/pull function was unlimited.[4]  (Tr. 272.)  Dr. Wolfe indicated Plaintiff had no manipulative limitations.  (Tr. 274.)  Harris Faigel, M.D., agreed with Dr. Wolfe's assessment.  (Tr. 283-84.) The ALJ concluded Plaintiff's complaints were not credible, in light of her activities, but nearly all of Plaintiff's activities cited by the ALJ were related to her ability to stand/walk.[5]  The ALJ asserted, "This conclusion that claimant can perform a limited range of medium work is confirmed by her admissions concerning her activities of daily living, as discussed above, as well as corroborated by the weight [of] the record evidence."  (Tr. 23.) Contrary to the ALJ's assertion, the record is devoid of admissions from Plaintiff that are inconsistent with her claims about the severity of her right elbow impairment.  Instead, Plaintiff's testimony supports her claims.  For example, Plaintiff testified that she is no longer able to do the heavy household chores, such as cleaning the bathtub or polishing the oak table because she cannot apply enough pressure with her arms.  Also, she cannot perform the sweeping, mopping, vacuuming, or window washing.  (Tr. 38.)  She stated that the vacuuming was too difficult and hurt her right arm. (Tr. 43.)  The Plaintiff also testified that she can no longer stir cookie dough, lift heavy pots, and that unpredictably, her right

---

[4] Medium work involves "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."  20 C.F.R. §§ 404.1567(c) and 416.967(c).

[5] The ALJ also cited "cutting out arts and crafts" and "computer work," which arguably could implicate the use of Plaintiff's elbow, but he failed to analyze or discuss these activities.  (Tr. 21.)

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 15

hand will suddenly give out, causing her to drop any item in her hand. (Tr. 44; 46.)  In August, 2008, Plaintiff rated her pain related to her elbow as seven on a scale of one to ten.  (Tr. 298.)

Additionally, the weight of the medical evidence indicates that Plaintiff's mobility and strength are compromised by the condition of her right elbow.  (Tr. 215-17; 246; 292-94; 297-99.)  Thus, neither of the bases the ALJ relied upon in finding Plaintiff not credible is supported by the record.

**4.   Remand**

The decision to remand to the Commissioner for further proceedings or simply to award benefits is within the discretion of the court.  *Harman*, 211 F.3d at 1175–78; *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). "If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded.  Where, however, a rehearing would simply delay receipt of benefits, reversal and an award of benefits is appropriate." *McAllister*, 888 F.2d at 603 (citation omitted); see also *Varney v. Secretary of Health & Human Serv.*, 859 F.2d 1396, 1399 (9th Cir. 1988) ("Generally, we direct the award of benefits in cases where no useful purpose would be served by further administrative proceedings . . . or where the record has been thoroughly developed.").

Here, the court concludes that the errors identified above can be remedied with further proceedings.  On remand, the ALJ should address these errors by properly evaluating the medical evidence, including the opinions of Plaintiff's treating providers.  Remand also is appropriate to allow the ALJ to consider properly the

Plaintiff's subjective complaints and to incorporate such consideration in evaluating the medical record and Plaintiff's functional limitations.

## CONCLUSION

Having reviewed the record and the ALJ's findings, this court concludes the ALJ's decision is not supported by substantial evidence and is based on legal error. Remand consistent with this decision is necessary. Upon remand, the ALJ shall reconsider the opinion of Ms. Hayes and Dr. Canfield, and shall consider the entire record. Accordingly,

**IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment **(ECF No. 13)** is **GRANTED**. The matter is remanded to the Commissioner for additional proceedings pursuant to sentence four 42 U.S.C. § 405(g).

2. Defendant's Motion for Summary Judgment **(ECF No. 15)** is **DENIED.**

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. Judgment shall be entered for **Plaintiff** and the file shall be **CLOSED**.

DATED February 6, 2012.

S/ CYNTHIA IMBROGNO
UNITED STATES MAGISTRATE JUDGE

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 17